IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STARLET HOWIE,
Petitioner,

v.                                                                    Case No. 19–CV–01141–JPG

UNITED STATES OF AMERICA,
Respondent.

## MEMORANDUM & ORDER

This is a post-conviction proceeding. Before the Court is Petitioner Starlet Howie's Motion to Vacate, Set Aside, or Correct Sentence. (ECF No. 1). The Government responded. (ECF No. 9). For the reasons below, the Court **DISMISSES** Howie's Motion and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

## I.   PROCEDURAL & FACTUAL HISTORY

In May 2017, Howie was indicted in this District for conspiring to distribute methamphetamine in violation of Sections 841(b)(1)(B) and 846 of Title 18 of the U.S. Code. (Second Superseding Indictment at 1, *United States v. Howie*, No. 17-CR-40011-JPG-7 [*hereinafter* "Crim. R."], ECF No. 1). Because Howie was previously convicted of a felony drug offense, a conviction under § 841(b)(1)(B) meant an enhanced sentence of 10-years-to-life imprisonment. (Information to Establish Prior Conviction at 1–4, Crim. R., ECF No. 169).

Howie then made an initial appearance before Magistrate Judge Reona Daly, who issued bond. (Order Setting Conditions of Release at 1, Crim. R., ECF No. 173). Judge Daly also appointed attorney Shanna Surratt to represent Howie in the case. (Order Appointing Counsel at 1, Crim. R., ECF No. 138).

A few months later, Magistrate Judge Daly revoked Howie's bond after she tested positive for amphetamine and methamphetamine. (Order of Detention at 1, Crim. R., ECF No. 230, *granting* Ex Parte Motion to Revoke Bond, Crim. R., ECF No. 224).

Then, in January 2018, the Government offered a plea agreement with a recommended sentencing range of 135 and 168 months. (Plea Agreement at 3, 7–9, ECF No. 9-1). Howie rejected it, and "[t]he main reason for that choice was the fact that [she] would be waiving all [her] appeal rights and there would be no guarantee of any benefit going forward with the Government." (Letter from Surratt to Howie on Jan. 25, 2018, ECF No. 9-3, at A3). Howie also did not want to commit to that proposed sentencing range because she hoped that, "as a first time offender," she would "receive the safety valve, which would allow the Court to go below the mandatory minimum of ten years." (*Id.*).[1] That said, Surratt told her that there was no guarantee she would receive the safety valve. (Notes from Conference on Jan. 25, 2018, ECF No. 9-3, at A2)

Later that month, Howie appeared before this Court and entered an open plea of guilty. (Minute Entry at 1, Crim. R., ECF No. 318). Before she did so, however, the Court informed her that pleading guilty to the offense carried a term of imprisonment of 10 years to life. (Tr. of Plea Proceedings at 6, Crim. R., ECF No. 558). The Court explained that this was an enhanced penalty "[b]ecause there was an 851 information filed establishing a prior conviction, which bumps up the penalty range . . . ." (*Id.*). Howie acknowledged that she understood and that she did not have any questions about "the nature of the charge against [her] or the possible penalties[.]" (*Id.*). She also

---

[1] The so-called safety valve "permits a sentencing court to disregard a statutory minimum sentence"—in this case, ten years—"for the benefit of a low-level, nonviolent, cooperative defendant with a minimal prior criminal record, convicted under several mandatory minimum controlled substance offenses. *See* Charles Doyle, Cong. Rsch. Serv., R41326, Federal Mandatory Minimum Sentences: The Safety Valve and Substantial Assistance Exceptions 1 (updated Feb. 22, 2019).

confirmed that she was "fully satisfied with the counsel[,] representation[,] and advice given to [her] in this case by [her] attorney." (*Id.* at 4).

Before sentencing, the U.S. Probation Office issued an Initial Presentence Investigation Report ("PSR") to help the Court make its determination. (Initial PSR at 1, Crim. R., ECF No. 391). The Initial PSR described Howie's prior convictions, including the 2007 "possession of a controlled substance" offense that enhanced the penalties on the underlying charge. (*Id.* at 9–11). Even so, the Initial PSR suggested that Howie met "the criteria set forth in the safety valve provision" and was therefore eligible for a two-point reduction in offense level. (*Id.* at 8, 17). The Initial PSR therefore asserted that Howie had a total offense level of 33 (which also reflected a three-point reduction for acceptance of responsibility) and a criminal history category of I, yielding a sentencing range of 135-to-168 months' imprisonment. (*Id.* at 15).

After the Initial PSR was issued, the Government informed the U.S. Probation Office that Howie did not, in fact, meet "the provisions necessary for the two-level reduction for the safety valve." (Attorney Letter at 1, Crim. R., ECF No. 409-1). The U.S. Probation Office then issued a First Revised PSR that removed the two-point reduction under the safety provision, yielding a new sentencing range of 168-to-210 months. (First Revised PSR at 15, Crim. R., ECF No. 409).

Howie, through counsel, raised several objections to the PSR. (Def.'s Objections at 1, Crim. R., ECF No. 435). Relevant here, she argued that she was "eligible for the safety valve reduction" because: "1) Ms. Howie has one criminal history point; 2) Ms. Howie did not use violence or threats of violence; 3) the offense resulted in no injury or death to any person; and 4) Ms. Howie was not the organizer, leader, manager or supervisor of others in the offense." (Def.'s Mem. in Support of Her Objections at 2, ECF No. 448). For support, she pointed to an affidavit

supposedly prepared by a fellow inmate, Krystle Sands, who sought to discredit one of the Government's witnesses. (Sands Affidavit, Crim. R., ECF No. 488-1).

In response, the Government argued that Howie was ineligible for the safety-valve reduction because she failed to provide it with truthful information about the conspiracy per the U.S. Sentencing Guidelines Manual. (Gov't Resp. to Def.'s Objections at 10, Crim. R., ECF No. 459) (citing U.S. Sentencing Guidelines Manual § 5C1.2(a)(5)). More specifically, the Government asserted that Howie lied about "her association with and knowledge of" several known or suspected criminals including her husband. (*Id.* at 10–11). Worse, the Government sought a two-level enhancement for obstruction of justice upon uncovering that Sands' testimony was false and made at Howie's direction. (*See* Gov't Resp. to Def.'s Mot. for Downward Departure at 7, Crim. R., ECF No. 515).

Soon after, the parties negotiated and entered into a Post-Plea Agreement. (Crim. R., ECF No. 525). Howie agreed to withdraw several of her objections to the First Revised PSR and agreed that the relevant conduct involved 22.7 kilograms of methamphetamine-ice. (*Id.* at 4). In return, the Government agreed to recommend that Howie receive the two-level safety-valve reduction. (*Id.*). Howie also conceded that she did obstruct justice and that the two-level enhancement applied; but she insisted that she was still entitled to a three-level reduction for acceptance of responsibility. (*Id.*). If the Court were to adopt the Government's recommendation, then Howie would have a sentencing range of 235 to 293 months. (*Id.*). If, on the other hand, the Court were to adopt Howie's recommendation, then she would have a range of 168 to 210 months. (*Id.*).

At sentencing, the Court gave Howie "a tremendous break by giving [her] acceptance of responsibility in light of the fact that [she] did obstruct justice." (Tr. at 50, Crim. R., ECF No. 561). The Court settled on a 192-month sentence given her prior convictions and the considerable

relevant conduct of 27.1 kilograms of methamphetamine-ice. (*Id.* at 50–51). The Court also noted that Howie "made some serious mistakes when [she was] let out on bond by getting involved in meth again . . . ." (*Id.* at 50).

Less than a year after the Court entered judgment, Howie moved to vacate, set aside, or correct her sentence: Surratt was supposedly "ineffective because she misrepresented the maximum exposure that the [she] faced and encouraged [her] to enter into an open plea." (Def.'s Mem. in Support at 1, ECF No. 1-1). She also contends that her attorney wrongfully advised her "to solicit an affidavit from a witness, without advising her of the potential consequences." (*Id.* at 1–2). Finally, Howie argues that her attorney error by not filing "a timely objection" to the Government's request for an obstruction-of-justice enhancement. (*Id.* at 2).

## II.  LAW & ANALYSIS

Prisoners may move to vacate, set aside, or correct a federal sentence because it "was imposed in violation of the Constitution or laws of the United States" within one year from the entry of judgment. 28 U.S.C. § 2255(a), (f)(1).

Relevant here, the Sixth Amendment guarantees an accused the right to counsel. U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963). And "the right to counsel is the right to the **effective assistance** of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). Defense counsel, therefore, can "deprive a defendant of the right to effective assistance, simply by failing to render adequate legal assistance." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (cleaned up).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

> Second, the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's errors
> were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable. Unless a defendant makes both showings,
> it cannot be said that the conviction or death sentence resulted
> from a breakdown in the adversary process that renders the result
> unreliable.

*Id.* at 687; *see also Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (recognizing that the right to effective assistance of counsel "extends to the plea-bargaining process").

Howie says that Surratt's performance was deficient for three reasons—but none are persuasive. First, Howie argues that her "attorney was ineffective because she misrepresented the maximum exposure that the [she] faced and encouraged [her] to enter into an open plea." (Def.'s Mem. in Support at 1, ECF No. 1-1). The record, however, suggests otherwise. Surratt's notes, for example, suggest that Howie was mainly concerned about waiving her appeal rights. Indeed, Howie clarified that she hoped to receive the safety valve: She knew that a mandatory minimum might apply. To be sure, the Court explained to her before accepting her plea that she might face an enhanced penalty; and Howie acknowledged that she understood the possible penalties that could be imposed. Howie also **received** the safety-valve reduction and the acceptance-of-responsibility reduction: Her sentence also reflects the admittedly obstructive behavior *after* pleading guilty. Conversely, there is nothing in the record suggesting that Surratt's legal "advice was not within the range of competence demanded of attorneys in criminal cases." *See Strickland*, 466 U.S. at 687 (cleaned up).

Next, Howie contends that her attorney wrongfully advised her "to solicit an affidavit from a witness, without advising her of the potential consequences." (*Id.* at 1–2). But according to Surratt, Howie approached her counsel that there was someone "within the jail that was willing to write a statement on her behalf." (Surratt Aff. at 2, ECF No. 9-3). Surratt swears that she "would

never tell a client to fabricate an affidavit and. . . would never instruct a client to tell a witness what to write." (*Id.*). Indeed, Howie's accusation is a serious charge for which there is no support. Yet by entering into the Post-Plea Agreement, Howie admitted that she herself obstructed justice by directing Sands to write lies for her. And "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. In short, Howie failed to defeat the strong presumption that Surratt's conduct fell "within the wide range of reasonable professional assistance . . . ." *See id.*

Finally, Howie argues that her attorney error by not filing "a timely objection" to the Government's request for an obstruction-of-justice enhancement. (*Id.* at 2). But Surratt **did** object to the enhancement, (Def.'s Objs. to PSR at 4–6, Crim. R., ECF No. 512); and the Government responded on the merits—the timeliness of Surratt's objection was never at issue, (Gov't's Resp. to Def.'s Mot. for Downward Departure at 9–11, Crim. R., ECF No. 515). So even if Surratt's objection was untimely, Howie suffered no prejudice.

With that, the Court **DISMISSES** Howie's Motion and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

## III.    CERTIFICATE OF APPEALABILITY

A petitioner under Section 2255 may not proceed on appeal without a certificate of appealability, which may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). This requires the petitioner to "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1046 (7th Cir. 2001).

Howie has not made a substantial showing that she was denied a constitutional right: Reasonable jurists could not debate whether Surratt was ineffective. The Court therefore declines to issue a certificate of appealability.

## IV.   CONCLUSION

The Court **DISMISSES** Petitioner Starlet Howie's Motion to Vacate, Set Aside, or Correct Sentence and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

**IT IS SO ORDERED.**

**Dated: Thursday, June 3, 2021**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
